## Appeal of GEORGE S. CRYDER, Executor of ISRAEL CRYDER, deceased.

1. A testator having ordered that his debts should be paid, proceeded to direct that farm A. should be sold upon certain terms as to the mode and time of payment, and farm B. for the best price that could be gotten for it. He next bequeathed legacies to certain of his children to be paid out of the proceeds of A., and, if that be not sufficient, the balance to be made out of the proceeds of B., and then he devised certain lands to other of his children in fee. He afterwards directed the "pecuniary legacies," payable out of the proceeds of A., to be paid in a certain order. The executor paid out the proceeds of the personalty, and of the sales of B. and of A., in discharge of debts, and had not enough left to pay the legatees. *Held*, 1. that the legacies were specific; 2. that the proper course of administration would have been to apply to the payment of the debts, 1, the personalty, 2, the proceeds of B., 3, the surplus of A. above the specific legacies charged on that fund, and 4, to have assessed the specific legacies and the devises rateably for any deficiency.

2. Where lands devised are liable to contribute to the payment of debts rateably with specific legacies, and the executor uses the fund of the legatees to meet the whole deficiency of assets for the payment of debts, it is such mismanagement as that the Orphans' Court may require him to give security.

APPEAL from the Orphans' Court of Huntingdon.

*May* 24. This case arose in the court below upon a citation to

George S. Cryder, executor of the will of Israel Cryder, deceased, to give security, under § 22 of the act 29th March, 1832. The case involved the construction of the will of the testator, of which it becomes necessary to give an extract.

By the will, he *first* directs all his debts and funeral expenses to be paid by his executors as soon after his decease as possible.

He next directs his mansion farm to be sold by his executors, fixing the first payment at $6,500, and the balance to be paid *in yearly payments of* $1,000, *without interest*, to be secured by bond and mortgage.

He then directs his fulling mill property to be sold for the best price that can be obtained.

He then gives legacies to those of his children living, and to the heirs of those deceased, amounting in all to the sum of $5,500; and, after making these bequests, adds, " the foregoing legacies to be paid out of the sale of the first within mentioned tract of land, or farm, and, if that be not sufficient, the balance to be made up out of the proceeds of the sale of the fulling mill property aforesaid." In another part of the will, referring to these legacies, he says, " The within *pecuniary* legacies to be paid to the respective heirs within named, according to their ages, as it becomes due, without interest."

He then makes specific devises of his real estate situate in Antes township, in three several parts, to wit, to his son Daniel, to his son George S., the executor and appellant, and to the children of his son Jacob, deceased, " to have and to hold to them, their heirs and assigns respectively, for ever."

The real estate ordered to be sold, was sold for $10,000. This sum, with the personal estate, proved insufficient to pay both the debts and the legacies, there being but about $2,500 remaining to pay the legacies after paying the debts.

The appellant, supposing, from the fact of the first payment upon the first tract of land being fixed by the testator at $6,500, and the legacies amounting to only $5,500—from the provision for the payment of the legacies "*yearly as it becomes due, without interest*" —from the provision for the payment of the *balance* of them out of the fulling mill property, if necessary—that the testator intended his debts to be *first* paid, so applied the money coming to his hands; and, after they were paid, there was a deficiency in the amount left to pay the legacies of about $3,000.

Some of the legatees obtained a citation to the executor, to show cause why he should not give security, or be discharged.

Afterwards, upon the same petition, on motion, a rule was granted on the executor to show cause why he should not petition the court for a sale of the lands devised, to meet the payment of legacies.

The executor filed his answer to the citation, and relied upon the same answer for answer to the rule.

The opinion of the court below was delivered by WILSON, President.

" A testator, directing that all his just debts shall be paid, does not thereby create any greater or other lien on his estate than is created by the act of Assembly, and this general expression in the commencement of the will of Israel Cryder does not charge specifically any portion of his estate with the payment of his debts. At his death, his debts became a lien upon his whole estate, for the payment of which his executor, in the administration of the estate, is by law to apply first the proceeds of the personalty. This is the general principle when the bequests are not specific. No portion of the personal estate is specifically devised by the testator. He gives legacies to the amount of $5,500, and directs specially out of what portion of his real estate, to be sold by his executors, they shall be paid. As to the sale of his real estate, he directs that the farm on which he then resided, lying on the north side of the Petersburg and Alexandria road, should be sold by his executors as soon after his decease as possible, the first payment to be $6,500, and the balance in yearly payments of $1,000 each, without interest. He then directs his property, lying on the south side of the Alexandria and Petersburg road, on which the fulling mill is erected, to be sold by his executors, separate from the above property, as soon after his death as possible, for the best price that can be gotten for the same; then, after giving the legacies amounting to $5,500, as before stated, he adds, ' the foregoing legacies to be paid out of the sale of the first within mentioned tract of land or farm, and, if that be not sufficient, the balance to be made up out of the proceeds of the fulling mill property.' It is contended by the executor, that the land specifically devised to him and his brothers should not contribute to the payment of the debts of the testator; that, from the whole tenor of the will, the leading rule in the construction of wills, that the intention of the testator must govern, when applied in this case, shows the intention to be that the sons should hold the lands specifically devised to them discharged from the payment of the debts. But is it not equally clear that he intended the farm on which he resided, lying on the north side of the Petersburg and Alexandria road, or the amount

for which it should sell, should be applied to the payment of the legacies, if sufficient to meet the payment thereof, without charging the fund with the payment of his debts. He authorizes his executors to sell it, and specifically directs the foregoing legacies to be paid out of the sale thereof, 'and, if that be not sufficient, the balance to be made up out of the proceeds of the sale of the fulling mill property.' The direction of the testator to the executors to sell the first-mentioned farm, out of the proceeds of which to pay the legacies, is in the nature of a specific bequest, and as clearly the intention of the testator that the legatees shall receive the whole amount of the proceeds of the sale, if it does not sell for enough to pay all the legacies, or receive the whole amount of their legacies if it should sell for sufficient to satisfy them, as it was his intention that the devisees should have the whole of the land specifically devised to them.

"It is not necessary to advert to the authorities cited, to show that the legacies are not a charge upon the land devised to the sons, or to show that if the debts of the decedent were expressly directed, or intended by the testator, to be paid out of the fund arising from the sale of the first tract of land he authorized to be sold, that on a deficiency of assets, and amount of the sale of the lands authorized to be disposed of to meet the payment of the debts and legacies, the lands devised to his sons would not be charged, or they held to contribute.

"The executor, in his answer, and his counsel, in their argument, rest their case on the allegation, that the legacies are not specific; they are, in their terms in the clause, making the bequest pecuniary, and if the property, out of which they are to be paid, had not been designated by the testator, the legatees could have no claim on the devisees for contribution, and the amount of fund intended for payment of the legacies, required to discharge the debts, would have to be abated from the amount of the several legacies. But from the authorities I have met with in examining this case, I am satisfied the legacies should be held intentionally specific. The mansion tract is set apart by the testator, for the payment of the legacies, and by him exempted from the payment of his debts, except there be a surplus over and above what will pay the legacies. The land is not referred to only as the most convenient mode of paying the legacies, but is specially appropriated for that purpose; and to enable the executors to pay the legacies out of it, they are authorized to sell the same. It is not directing the payment of the legacies out of any property he may

leave, but out of the mansion farm to be sold by his executors for that purpose. In a case of Smallboone v. Brace, Chan. Cases, 303, cited in Swinburne on Wills, 28, the testatrix bequeathed £400 to the plaintiff, Smallboone, to be paid to him out of £500, secured by a statute, &c. The executor refused to pay, because the testatrix had bequeathed to other legatees above £1,000 more than her estate would satisfy, unless the plaintiff would submit to an abatement in proportion, but the whole was decreed to be paid to the plaintiff, because it was in the nature of a specific legacy, and ought not to be subject to any abatement, though the estate should fall short to answer the other legacies. From the note of this case in Swinburne, which is all I have before me, I cannot see any reason for saying it was in the nature of a specific legacy, except that it was to be paid out of a particular fund, which renders it very similar to the case under consideration; and if the law, as there held, be correct, the legatees in this case would have as strong grounds for saying they were entitled to payment in full of their legacies out of the fund raised by the sale of the land, out of which they are directed to be paid, as the devisees have to say that the land devised to them is discharged from any liability for the debts of the decedent.

"A specific legacy, properly speaking, is a bequest of a particular thing, but it may also be given out of a general fund, provided it is specified and separated from the general estate : Amb. 310 ; 4 Ves. Jr. 565 ; 3 Ves. & Bea. 5. If we are correct in saying these legacies are in their nature specific, and that it was the intention of the testator to exempt the land or fund to be raised from the sale of the land particularly specified, to satisfy the legacies, from the payment of the debts, no good reason can be assigned why the land devised to the sons should not bear its proportion of the deficiency of assets to meet the payment of the debts, unless a reason can be assigned for doing so, because of the legacies being in their nature specific, and the devise of land being more specific, or, to use an expression now in common use, the one specific, the other ultra-specific. The latter may claim a preference, but it has not been held, so far as I can judge from precedent or authority, that they are entitled to it.

"It is manifest the testator either overrated the value of his property, or had not a correct idea of the amount of his indebtedness. It is equally clear that he did not anticipate, and consequently did not intend that the legacies or land devised for their payment, any more than the land devised to his sons, should be charged with the

payment of his debts. The testator does not direct any particular portion of his estate to be applied to the payment of his debts, except by implication the land which he directs to be sold lying on the south side of the Alexandria and Petersburg road, and on which the fulling mill is erected, and the surplus, if there should be any, of the mansion tract, after payment of the legacies. By his death his debts became liens on his whole estate. No specific bequest being made of any portion of his personal effects, they are first applicable to the payment of the debts. This fund was exhausted. The whole of the testator's real estate is disposed of by the testator. After the application of the personal assets, the whole of the fund raised by the sale of the fulli ჳ mill property, as I understand the case (although the amount each tract sold for is not given us), was applied, and still a portion of the debts remained unpaid, to satisfy which the executor applied the funds raised from the sale of the mansion tract, which reduced that fund to about $2,500, which the executor contends, upon a proper construction of the will, is all that the legatees are entitled to out of the estate.

"The law charged this land with the payment of debts. The testator charged it with the payment of the legacies specially, but the law also charged the lands taken by the devisees with the payment of the debts, and exempted the fund to be raised out of the sale of the land directed to be applied to the payment of the legacies, should the land not sell for more than would be sufficient to pay for them. This is the irresistible inference of the testator's intention, from the language used by the testator providing for the payment of the legacies, in case this fund should be deficient, that the balance is to be made up out of the proceeds of the sale of the fulling mill property. I am not advised by the petition and answer, whether the mansion tract sold for more than the amount of the legacies, but judge it did, from the fact of the respondent saying that the whole sold (as I understand it, of the two tracts directed to be sold) for the sum of $10,000, upon the terms specified and directed by the will, and that he holds three bonds of the purchasers for $2,500, naming the times they are payable, and adding 'these are the times and terms of payment directed in and by the will.' The first payment of the mansion tract, as directed by the will, would be $6,500, so that, although not expressly shown by the petition and answer, that the mansion tract sold for more than the amount of the legacies, we conclude from them that such is the fact. Had it sold for less, the legatees could not have received from the amount of the sale of the property lying south of the

G 2

Alexandria and Petersburg road, on which the fulling mill is erected, any amount towards the payment of their legacies, when the whole of that fund was required to pay the debts, or have asked from the devisees of the land to make up to them the amount of their legacies; and in making contribution, the amount that the mansion place sold for (had it sold for less than the legacies), would be the amount upon which the rateable proportion to be borne by the legatees towards payment of the debts would have to be based. The direction for the sale of the fulling mill land is, that it be sold separate from his other property, and as soon after his decease as possible, for the best price that can be gotten for the same, without any direction for the application of the fund arising from the sale : evidently, as we conceive, judging from the whole will, as well as the law where no special devise or bequest is made of property, which the testator is presumed to know, intending the fund for the payment of his debts. The funds from the sale of the mansion farm he appropriates exclusively to the payment of the legacies in the first instance. Should it not sell for the amount of the legacies, the balance to be made up out of the fulling mill place; but this we must understand, where the power to sell the fulling mill property, is so evidently for the payment of the debts, that the legatees could only claim payment of any portion of their legacies out of the latter fund in case it sold for more than sufficient, with the personalty, to pay the debts. The distinction between specific and pecuniary legacies is often difficult to be made ; but when a testator gives a legacy and names specially *his* property or fund out of which it shall be paid, it will be in its nature a specific, or at least a demonstrative legacy : Richardson *v.* Brown, 4 Ves. Jr. 377 ; Ward on Legacies, 27 and 21, &c.

" Such legacies and devises of real estate, which are specific, abate proportionably : Hood on Ex'rs, 354.

" We are of opinion that the legacies are to be treated as specific, and that the devisees will have to bear a proportionate amount of the deficiency of the assets and fund for the payment of the debts, and that the proper administration of the estate under the will should be as follows :—

" To be applied to the payment of the funeral expenses, expenses of administration and payment of debts :

" 1st. The personal estate.

" 2d. The proceeds of the sale of the fulling mill property.

" 3d. The surplus of the fund raised from the sale of the mansion

tract, over and above the amount of the legacies charged on this fund.

"4th. The deficiency to be rateably paid by the devisees and legatees.

"There is a difficulty in determining the amount each should pay, in consequence of no valuation being fixed on the lands taken by the devisees.

"Two rules are now pending against the executor, one granted 16th December, 1847, to appear on the 14th January, 1848, to show cause why he should not give security for the due and faithful execution of the last will and testament of Israel Cryder, deceased, or be dismissed and removed from his trust as executor, to which his answer was filed 14th January, 1848. The second, granted 26th August, 1848, a rule on him to appear in court on the 1st day of November, 1848, to show cause why he should not petition the court for a sale of the land of the deceased, devised, to meet the payment of the legacies, and to enable him to administer the estate, for answer to which he relies on his answer filed to the former rule. The land devised is not charged with the payment of the legacies, and we cannot oblige him to sell for that purpose. It was by the death of Israel Cryder charged, as well as his other property, with the payment of the debts due by the decedent. But the debts have been paid, as the executor admits, out of the money raised by the sale of the land designated by the testator for the payment of the legacies. Some of the legacies are not yet due, and although the estate devised to him is not charged with the legacies, we do not see how we can compel him to sell the land devised to him at present, although it is bound, if we are right in our construction of the will, to contribute to the payment of the debts, which we think for his proportion he can be compelled to account to the legatees at the proper time.

"There are lands devised to the children of Jacob Cryder, a son of the deceased, and to his son George S. Cryder, as well as to his son Daniel, that are liable to contribute. Instead of calling on the heirs of Jacob and of Daniel for the proportion the lands devised to them would contribute, or asking the court for an order to sell sufficient thereof, on their refusal, he has in the same way paid what their devises should have contributed; he uses the funds of the legatees to meet the whole deficiency of assets for the payment of the debts, and has possibly thereby made himself personally liable to the legatees for the proportion that the lands devised to them would have borne, as well as his own; and now taking the

general ground that some of the lands devised are liable to contribute, or that they could have been sold, on his application to the court, for the payment of the debts or any portion of them, and as the legacies are not yet due, we think it presents such a case of mismanaging the estate and property under charge, as to require him to give security.

"Ordered, that the executor give bond, with security to be approved of by the Register, in the sum of $11,000, as directed, and with the condition prescribed by the 22d section of the act of 20th March, 1832, relating to Orphans' Courts.

"Security to be given within thirty days from this date.

"Rule on executor to show cause why he should not proceed to sell, &c., discharged.                    By the Court."

George S. Cryder having made oath, entered into recognisance, and appealed to this court, made the following assignment of errors :—

1. The court erred in assuming that the land on the north side of the Petersburg and Alexandria road was *set apart exclusively* for the payment of the legacies, and EXEMPTED by testator from the payment of debts.

2. The court erred in deciding that the legacies were to be *first* paid out of the proceeds of the sale of the land ordered to be sold.

3. The court erred in not deciding that the debts were to be *first* paid out of the proceeds of the land ordered to be sold.

4. The court erred in deciding that the proceeds of the fulling mill property were intended as the first fund for the payment of debts.

5. The court erred in deciding "that the devisees will have to bear a proportionate amount of the deficiency of the assets, and fund for the payment of the debts."

6. The court erred in deciding that the appropriation of the proceeds of the land to the payment of the debts was a mismanaging the estate and property under charge, and *upon that ground* requiring him to give security.

*Scott*, for the appellant.—Counsel for appellant refers to the following authorities for the order in which the funds of an estate are liable to contribute for payment of debts, as between creditors, devisees, and legatees. Hoover *v.* Hoover, 5 Barr, 356 ; 2 Powell on Devises, 667–8 ; 2 Jarman on Wills, 546.

Whether the legacies in the will be pecuniary, specific, or in the

nature of specific, or demonstrative, they must abate: 2 Williams on Executors, 980, citing Steel v. Thorington, 2 Ves. Sen. 561, 564; Clifton v. Burt, 1 P. W. 680; 2 P. Wms., 382, 383; 2 Fonbl. Treat. Eq., B. 4, pt. 1, ch. 2, sect. 5, note q; 1 Roper on Legacies, 253 (edit. of 1829); Roberts v. Pocock, 4 Ves. 160.

Executor could not be discharged or required to give security for the cause assigned by the court: Sec. 22d of Act of 29th of March, 1832, Purd. Dig. 6th ed. 811; and Act of 22d April, 1846, Pamph. L. p. 483.

The reasons for which the Orphans' Court may dismiss executors, or require them to give security, besides those of lunacy and drunkenness, are prescribed by the Act of 29th March, 1832; and that they sold the real estate of testator, and became themselves the purchasers, is not one of them: Webb v. Dietrich, 7 W. & S. 401.

It was the executor's duty first to pay the debts in preference to legacies: Thomas v. Reigle, 5 R. 266.

*Fisher*, for the appellees.

ROGERS, J.—After a careful examination of the opinion of the court, and of the authorities cited, we have failed to perceive any error. The decision is affirmed for the reasons given by Judge WILSON.

Decree affirmed.