## Hammer's Estate.    Hammer's Executor's Appeal.

[Marked to be reported.]

*Wills—Legacy—Specific—Demonstrative—Ademption—Charge on land.*
In the construction of wills, courts uniformly lean to a construction which shall declare a legacy demonstrative rather than specific. Where there is nothing which clearly shows a testator meant to charge a legacy on the realty and to discharge the personalty, the legacy is demonstrative.

Testator directed that his executors should sell his real estate and " out of the proceeds of such sale shall pay to my son R. F. Hammer $3,000 to equalize him with my other sons who have been advanced $3,000 each in the purchase of real estate." Testator further directed that all his per-

sonalty should be distributed as he in his will thereinafter directed. He then in subsequent clauses bequeathed $1,000 to each of his daughters. The remainder, real and personal, was to be divided equally among his children. The realty sold for less than enough to pay the above mentioned legacy to the son. *Held*, that the legacy was demonstrative and not specific. Cryder's Appeal, 11 Pa. 72, distinguished.

Argued Oct. 11, 1893. Appeal, No. 218, Oct. T., 1893, by John C. Hammer et al., executors of Solomon N. Hammer, deceased, from decree of O. C. Somerset Co., dismissing exceptions to auditor's report distributing decedent's estate. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Distribution of decedent's estate. Before LONGENECKER, P. J.

The case was referred to John G. Ogle, Esq., as auditor, who found that the real estate mentioned in the will was sold at public sale to R. F. Hammer for $1,835.

Testator's will was as follows:

" First my will is that all my just debts and funeral expenses and the executing of this my last will and testament by my executors hereinafter named be first fully paid and satisfied.

" 2nd. As to my personal estate my will is that it shall be sold by my executors hereinafter named, as soon after my decease as shall by them be found convenient and the proceeds of such sale to be distributed as hereinafter directed.

" 3rd. I give and bequeath to my daughter Mary intermarried to Daniel Cauffiel five hundred dollars in addition to an advancement of five hundred dollars.

" 4. I give and bequeath to my daughter Charlotte Livingston one thousand dollars out of my personal estate, to equal her with my other daughter Mary Cauffiel.

" 5. I give and bequeath to my son Joseph S. Hammer one dollar out of my estate and no more.

" 6th. I give and bequeath to Cordia Augusta Thomas four hundred dollars.

" 7. As to my real estate my will is that the same shall be by my executors hereinafter named exposed to public sale, as soon after my decease, and on the best terms as shall by them be found convenient, and out of the proceeds of such sale, shall pay to my son R. F. Hammer three thousand dollars to equal-

ize him with my other sons John C. Hammer and David M. Hammer who were advanced three thousand dollars each in the purchase of real estate and I further give and bequeath to my son R. F. Hammer two thousand dollars as a special bequest.

" 8th. And as to the remainder of my estate real, personal or mixed my will is that it shall be divided in six equal parts and distributed as follows viz. one sixth part thereof to my son John C. Hammer, one sixth part to my son David M. Hammer, one sixth part to my son R. Forward Hammer, one sixth part to Elizabeth Hammer wife of my son Joseph S. Hammer, one sixth part to my daughter Mary Cauffiel and one sixth part to my daughter Charlotte Livingston, and lastly I do nominate and appoint my sons John C. Hammer and David M. Hammer as the executors of this my last will and testament."

The auditor admitted evidence to show that the special bequest of $2,000 was intended in trust for Joseph, and that this sum, with a previous advancement of $600 to Joseph and a bequest of $400 to his illegitimate daughter, Cordia August Thomas, amounted to the sum of $3,000, like those given to the other sons.

The auditor disregarded testimony introduced under objection to show the value of the real estate and the estimated value put upon it by testator.

The auditor awarded balance of legacy to R. F. Hammer, appellee.

Exceptions by appellants were dismissed and report confirmed.

*Errors assigned* were (1) holding legacy demonstrative; (2) not holding it specific; (3, 4) distributing to appellee as above; (5) rejecting testimony; quoting the substance only.

*F. J. Kooser, Ernest O. Kooser* with him, for appellants.— Absolute equality was not intended by testator. The intent was to pay appellee's legacy out of the realty in the same manner as the other sons had been advanced. The fact that testator gave none of his children so much as $3,000 by legacy, except in realty, shows his uncertainty as to actual value of the realty.

Wherever an intent is exhibited to make a distribution of the

value of lands, either by means of a sale and division of pro-
ceeds, or by charge of a sum in numero, payable by the devisee
of the land as a quasi partial purchase of the estate devised,
the bequests are treated as specific : Wall v. Stewart, 16 Pa.
275, and cases cited on pages 284-7. To the same effect are
Cryder's Ap., 11 Pa. 72, and Balliet's Ap., 14 Pa. 451.

Keeping the real and personal estate separate is a reason for
holding a legacy specific : Balliet's Ap., 14 Pa. 461. They
are so in the case at bar.

Not only is the realty charged with payment of this legacy
but the personalty is discharged. The latter is to be distribut-
ed " as hereinafter directed."

A design expressed to make a legatee equal to others does
not indicate an intent that, on deficiency of assets, the defi-
ciency should be made up out of other devises : Okeson's Ap.
59 Pa. 99.


*W. H. Koontz, W. J. Baer* with him, for appellee.—The legal
construction of the will cannot be affected by the parol declara-
tions of the testator : Comfort v. Mather, 2 W. & S. 450 ; Wood-
man v. Good, 6 W. & S. 169 ; 1 Jarman on Wills, 726 ; 3 Ib.
705.

Personal estate is the primary fund to pay legacies, and it is
not released from liability in the first instance when the legacy
is made a charge on land, unless such be indicated in the will :
1 Roper Leg. 196 ; Hanna's Ap., 31 Pa. 53 ; Breden v. Gilli-
land, 67 Pa. 34.

A demonstrative legacy is so far general that if the fund fail
it is not thereby diminished or adeemed, but must be paid out
of the residuary estate with other general legacies : 13 A. & E.
Enc. L. 10, 13, 14 ; 1 Roper, Leg. 169 ; Armstrong's Ap., 63
Pa. 315 ; Balliet's Ap., 14 Pa. 461 ; Walls v. Stewart, 16 Pa.
275 ; 2 Williams, Ex. 740.

Courts are averse to construing a legacy to be specific, and
to overcome that reluctance the intention must be clear : 13 A.
& E. Enc. L. 15 ; Balliet's Ap., 14 Pa. 461 ; Walls v. Stewart,
16 Pa. 275 ; Ludlam's Est., 1 Pars. 121 ; Walker's Est., 3 Rawle,
243.

If it be manifest that there was a fixed and independent in-
tent to give the legacy, separate and distinct from the property

designated as the source of payment, the legacy will be deemed general or demonstrative though accompanied by a direction to pay it out of a particular estate or fund specially named : Walls v. Stewart, 16 Pa. 281–3.

Ademption does not apply to legacies of so much money with reference to a particular fund for payment : 2 Williams, Ex. 820.

In Balliet's Appeal the pecuniary legacies were to be paid by the devisees only out of certain real estate devised. In Cryder's Appeal the land was specially appropriated as the only fund for purpose of paying the legacy. Okeson's Appeal does not apply.

OPINION BY MR. JUSTICE DEAN, December 30, 1893 :

Solomon N. Hammer, the testator, died February 13, 1890, leaving six children, four sons, Joseph S., John C., David M. and Ross F., and two daughters, Mary Cauffield and Charlotte Livingston.

In his lifetime, he had conveyed to his two sons, John C. and David M., farms at a valuation, and had credited to each three thousand dollars on the purchase money as an advancement. At his death, he still owned the " Gindlesperger farm," for which he had paid, some thirty years before, twenty-five hundred dollars. This he had improved by building upon it a very substantial farm house, so that it is not improbable the testator fixed the value of this property by what it had cost him, instead of by what it would fetch, and thus overestimated the amount of money which would come into the hands of his executors from a sale of it. This farm, then, being the only real estate which the testator owned at his death, he makes this disposition of it in paragraph 7 of his will :

" As to my real estate, my will is that the same shall be by my executors hereinafter named, exposed to sale as soon after my decease, and on the best terms as shall by them be found convenient, and, out of the proceeds of such sale, shall pay to my son, R. F. Hammer, three thousand dollars to equalize him with my other sons, John C. Hammer and David M. Hammer, who were advanced three thousand dollars each in the purchase of real estate ; and I further give and bequeath to my son R. F. Hammer two thousand dollars as a special bequest."

It is conceded that the special bequest of $2,000 to R. F. Hammer was intended for Joseph, and has nearly all been paid over by his brother. It further appeared from the evidence, that testator, in his lifetime, had advanced to Joseph six hundred dollars, and by item 6 of his will had bequeathed to Cordia Augusta Thomas, Joseph's daughter, four hundred dollars, thus making the sum of the whole, directly and indirectly given to Joseph, three thousand dollars. The two daughters, by advancements and bequests, each received one thousand dollars.

The farm, after being properly advertised and fairly offered at public sale, was sold for only $1,835. The purchaser was R. F. Hammer, son and legatee named in the seventh paragraph of the will, and who now makes claim as a legatee to the whole $3,000, out of the general fund. The other brothers resist this claim, alleging that the legacy under the will is specific, to be paid only out of the particular fund realized from the sale of the farm ; it is argued that, as the farm sold for only $1,835, so much of the three thousand dollars as is not reached by that fund must be held to be adeemed. The court below decided in favor of the claim of R. F. Hammer, and from that decree comes this appeal.

The question turns on the intent of the testator. Did he intend to relieve his personal estate from the payment of any part of this legacy? If so, it is specific, and no part of it can be paid out of other than money realized from the real estate ; otherwise, it is demonstrative and payable out of the general fund. Courts uniformly in such cases lean to a construction which shall declare the legacy demonstrative rather than specific : Balliet's Appeal, 14 Pa. 461 ; Walls v. Stewart, 16 Pa. 275 ; Smith's Appeal, 103 Pa. 561. The whole subject of specific and demonstrative legacies is so elaborately treated in Walls v. Stewart, supra, that repetition is useless. If there could be deduced from this will a clear intention to charge the land alone with the payment and to discharge the personalty, the appeal should be sustained, otherwise, not. From all the cases, that is the rule to be followed.

The testator, in the second item of his will, directs that all his personalty, which, as the event proved, amounted to about $7,500, should be distributed as he in his will thereinafter directed. He doubtless knew approximately the value of this

personalty. Then, in the subsequent dispositions, the intention is manifest to give each of the daughters $1,000, and each of the sons $3,000; he expressly says in the seventh clause that the intention is to equalize Ross F. with his brothers John and David, to each of whom he has advanced $3,000; Joseph, as we have already noticed, also having by the testator's method of distribution got $3,000. The primary, paramount intent here is to equalize his gifts to his sons at $3,000 each; evidently, to give Ross, who as yet has received nothing by advancement, $3,000; then is expressed the secondary or subordinate intent, the direction to the executors to pay the amount out of the money realized from the farm. There is nothing which clearly shows the testator meant to charge the farm alone with the legacy, and discharge the personalty; and, unless this so appears, the legacy is demonstrative. Doubtless, it did not occur to the testator that the farm might not sell for $3,000; he probably thought it worth much more; therefore the contingency that it might sell for less was not expressly provided for, simply because, to his mind, no such contingency existed; but it did occur to him that, as two of the sons had already received by advancements each $3,000, and the third would by advancement and legacy receive $3,000, the fourth, Ross, would not receive a like amount unless he positively and expressly said so; hence the unqualified direction to the executors to pay Ross $3,000 to equalize him with his brothers. True, he points out the source of this payment, which, as it now turns out, failed to come up to his expectations, but this cannot negative the absolute unqualified intention to equalize the sons at $3,000.

In ascertaining the intent from what the testator has said, in cases of this character, we seldom get much aid from authorities, for the reason that the words from which we must gather the intent are seldom the same. In the authorities cited and relied on by the learned counsel for appellant, Cryder's Appeal, 11 Pa. 72, and others, the wills interpreted contain no peremptory directions to equalize the legatees at a fixed sum, as in the will before us; if these words were absent from this will, the authorities cited would perhaps sustain the contention of appellant that this is a specific legacy; but with them present, no authority can overthrow the manifest intention of the testator, that the legatee shall have out of his estate the same amount of

money as his brothers. Such being the case, the learned auditor and court below were right in holding this a demonstrative legacy.

The decree is affirmed, and appeal dismissed at costs of appellant.