## Stoever's Estate (No. 1).

*Wills—Legacy—Specific and demonstrative legacies.*

1. Wherever an intent is exhibited to make distribution of the value of lands either by means of a sale and division of proceeds, or by the charge of a sum in numero, payable by the devisee of the land as a quasi partial purchase of the estate devised, the bequests are always treated as specific.

2. Where a testator devises land to a nephew at a sum stated per acre, and directs that the purchase money shall be paid by the devisee of the land to various legatees in amounts stated, the legacies are specific, and if the nephew refuses to take the land and it is sold at an amount less than the aggregate of the legacies, the legatees will be confined to the proceeds, and will not be entitled to have their legacies made up to the amount stated in the will from the other assets of the estate.

Argued Oct. 27, 1910. Appeal, No. 230, Oct. T., 1910, by Nathaniel Lieb, from decree of O. C. Lebanon Co., March T., 1908, No. 28, sustaining exceptions to auditor's report in Estate of William H. Stoever, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Exceptions to report of Grant Weidman, Esq., auditor.

HENRY, P. J., filed the following opinion:

William H. Stoever by his will provided, inter alia, as follows: "Item: I give, devise and bequeath unto my nephew Jacob Melancthon Stoever, and to his heirs and assigns, my farm near Myerstown, Lebanon County and State of Pennsylvania, upon which I at one time resided, containing fifty acres, more or less, at and for the sum of one hundred and seventy-five dollars ($175) per acre, which said purchase money I order and direct him to pay to the following named legatees in manner following:— Item: I give and bequeath one thousand dollars thereof to my friend Nathaniel Lieb, the tenant of my Berks County farm, which is situate near the City of Reading and to him, his heirs and assigns absolutely." Then follow four other bequests, similar in form including one to his wife Lucy in payment and satisfaction of a marriage contract, all of said pecuniary legacies aggregating the sum of $7,600. The testator further provided: "Item: I do hereby charge the purchase money at the rate of one hundred and seventy-five dollars per acre as aforesaid as a lien upon the farm devised as aforesaid to my nephew Jacob Melancthon Stoever; should, however, my nephew, refuse to take said farm at said price of one hundred and seventy-five dollars per acre, then and in such case, I order and direct my hereinafter named executors to sell the same, either at public or private sale, which to them may seem most advantageous," etc. "Item: It is further my will that my executors hereinafter named, as soon as to them may seem proper after my decease, sell the balance of my estate, real, personal and mixed, including my farm near Reading, either at public or private sale, as to them shall seem most advantageous to my estate, and collect all moneys due my estate, including whatever purchase money may be due by the said Jacob Melancthon Stoever for the farm devised to him, and after the same shall have been converted into money, I dispose of the same in manner following: Item:—I give and bequeath five hundred dollars thereof to V. Luther Stoever,

his heirs and assigns." He then bequeaths the "balance thereof."

Jacob Melancthon Stoever refused to take the farm at the price charged therefor by the testator and it was sold by the executors under the power given them by said will for the sum of $4,934.08.

The auditor appointed to make distribution of the balance in the hands of the executors under their accounting, concluded that the said bequest of purchase money of said farm amounting to $7,600 were general legacies and not subject to abatement for any deficiency in the selling price of said farm. Exceptions were filed by the residuary legatees to the auditor's distribution excepting to the allowance of said legacies in full as well as excepting to the payment in full of the legacy to V. Luther Stoever.

The position of the exceptants, briefly, is that said legacies of purchase money charged on the farm devised to Jacob Melancthon Stoever are specific and must be confined to the proceeds of the sale of this farm; on the other hand, these legatees contend that their legacies are demonstrative, not liable to any abatement for the deficiency between the selling price of the farm and the amount of the legacies charged against it in the devise to Jacob Melancthon Stoever and payable generally out of the estate of the testator.

"A demonstrative legacy is a gift of money or other fundible goods charged on a particular fund in such a way as not to amount to a gift of the corpus of the fund or to evince an intent to relieve the general estate from liability in case the fund fails:" 18 Am. & Eng. Ency. of Law (2d ed.), 721.

Among the earlier cases in Pennsylvania bearing on demonstrative legacies are Cryder's App., 11 Pa. 72, in which testator directed that his real estate should be sold and then gave certain legacies, directing that they "be paid out of the sale of" certain real estate, and Balliet's App., 14 Pa. 451, where testator devised certain lands subject to the payment of a certain sum of money by said

will bequeathed to his sister and the issue of his deceased brothers and sisters. In both of these cases the legacies were held to be specific.

In Walls v. Stewart, 16 Pa. 275, the doctrine of demonstrative legacies was carefully considered, the English and American authorities reviewed and the law with reference to this class of legacies stated to be as follows: "wherever an intent is exhibited to make distribution of the value of lands, either by means of a sale and division of proceeds, or by the charge of a sum in numero, payable by the devisee of the land as a quasi partial purchase of the estate devised, the bequests are always treated as specific." In this case the legacy was directly charged upon land devised, to be paid by the devisee and was held to be specific.

In Welch's App., 28 Pa. 363, real estate was devised to a son and the sum of $300 was bequeathed to a daughter to be paid by the son out of the profits of the real estate bequeathed to him, and it was held that the legacy was demonstrative, that the real estate charged was a mere auxiliary fund provided to secure its payment. The general rule was here stated to be "that where the legacy is so connected with the fund out of which it is payable, that the legacy and the fund are the same, it is specific."

In Smith's App., 103 Pa. 559, testator bequeathed to his son "the sum of $2,000, out of the sum of near $4,000 now on deposit in the Farmers Bank, providing the said amount and interest are collected from the assets or stockholders of said Bank," and to another son the sum of $1,500 with the same proviso, "the remaining part of the money collected from said Bank to be divided equally between" said sons. Testator collected the claim in his lifetime. Held that the said legacies to the sons were specific.

In Hammer's Est., 158 Pa. 632, testator directed conversion of his real estate and out of the proceeds directed $3,000 to be paid to a son "to equalize him with my other sons who were advanced $3,000 each in the purchase of real estate." This legacy was held to be demonstrative,

but the case seems to have turned on the expressed purpose of the testator to equalize the sons for amounts given to them, either before or after his death, and the court strongly intimated that but for the presence of these words in the will, the legacy in question would have been construed to be specific.

In Snyder's Est., 217 Pa. 71, testatrix bequeathed $600 of bank stock "of a named bank and $2,000 of the bank stock of bank referred to above," held, that these bequests were not specific, and that testatrix did not give to the legatees specific shares of bank stock belonging to her but gave in general terms a certain amount of bank stock in the bank, without identifying any particular shares or distinguishing those given from all others of the same kind of stock.

In Pruner's Est., 222 Pa. 179, testator bequeathed certain insurance policies held by him as security for a debt. The insurance matured and testator received the proceeds of the policies which he invested in bonds; held that the legacy was specific and was adeemed by the maturity and payment of the policies before the death of the testator.

Black's Est., 223 Pa. 382, in effect held that the legacy was specific, where testator bequeathed the proceeds of two bonds to legatees and during his lifetime collected the amount of the bonds, investing the proceeds in a mortgage, on the ground that this was a bequest of the proceeds of the bonds and these proceeds were traced out and identified intact.

Bearing in mind the somewhat shadowy distinctions of the cases, that courts incline against construing legacies as specific and that the intention of the testator should be clear to make a legacy specific, we must, however, not lose sight of the fact that the primary purpose of all rules of construction and interpretation is to arrive at the intention of the testator.

In the case at hand the testator in clear and express language devised the farm to his nephew at and for a certain sum of money and then gave part of these proceeds

to the legatees in question. In each bequest he uses the words "I give and bequeath          dollars thereof," referring to this purchase money. We are not dealing with the case of giving a legacy and then directing a fund out of which it shall be paid, but it is a direct and specific giving of the purchase money. The legacy and the fund are one and the same thing. Under the cases cited we think these legacies are clearly specific and that the testator intended that they should be confined for payment to the farm devised to his nephew. This conclusion is strengthened by the later clause of the will in which testator directs the conversion of the residue of his estate, "including whatever balance of purchase money may be due by the said Jacob Melancthon Stoever for the farm devised to him." Testator estimated the farm as containing fifty acres and at the figure at which it was devised to his nephew, viz.: $175 per acre, the purchase price would have been $8,750. The bequests of this purchase money amounted to $7,600, so that testator's intention was that about one-eighth of this purchase money, or in other words about one-eighth of this farm, should go to the residuary legatees.

The only indication of intention to make these legacies general is the provision giving $2,000 of this purchase money to testator's wife in payment and full satisfaction of a marriage contract, calling for the payment of this sum to her after his death. But this loses its force when we consider that this amount was payable in full in any event as a legal claim against his estate and in fact was paid by the executors and credit taken therefor in the account.

The fifth exception was evidently taken under a misapprehension. After providing for the conversion of the residue of his estate, including the collection of the balance of purchase money, over and above said legacies, for the farm devised to Jacob Melancthon Stoever, the testator gives $500 of this converted residue to V. Luther Stoever, his heirs and assigns. This is a general legacy, in

no wise bound by the restrictions of the legacies payable out of the purchase money of the said farm, and must be paid in full, less the deduction for collateral inheritance tax, which was properly made by the auditor.

And now, to wit, August 24, 1910, the first, second, third, fourth and sixth exceptions, so far as they pertain to the legacies charged against the farm devised to Jacob Melancthon Stoever, and payable out of the purchase money of said farm, are sustained; the fifth exception is overruled. The report is referred back to the auditor to recast the distribution in accordance with this opinion.

*Errors assigned* were in dismissing exceptions to auditor's report.

*Eugene D. Siegrist* and *H. Robert Mays*, for appellants. —Legacies are presumably demonstrative and not specific, and in order to proclaim a legacy specific it must appear not only that it is charged upon and payable out of a fund pointed out by the testator, but also that it is clearly the intention of the testator to exonerate his general estate from the payment of it, or of any part of it because of a deficit in the primary fund: Welch's App., 28 Pa. 363; Smith's App., 103 Pa. 559; Hammer's Est., 158 Pa. 632; Eavenson's App., 84 Pa. 172; Hoppel's Est., 5 Phila. 216.

*Dawson W. Light*, for appellees.

OPINION BY HEAD, J., March 3, 1911:

If we were to confine our attention to the definitions given by approved text writers, or to those decisions of the courts, English and American, which may be said to furnish typical illustrations of each class, the distinction between a specific legacy and what is now called a demonstrative one is easy to perceive. This distinction, resting as it does on sound reasoning as well as abundant authority, has never been departed from by our courts, and is a solidly established part of our system of jurisprudence.

Of course when a specific legacy related only to a distinctive chattel, for instance, a certain jewel, piece of plate or other like object, no question could arise. But specific legacies may be of money as well as of chattels, and it is such legacies that have given rise to most of the litigation on this subject. The difficulty arises in those cases where the courts have been called upon to determine, upon the construction of language more or less obscure used by a testator, what his real intention was as to the nature or quality of the legacy given. It has thus sometimes happened that the reasons for a conclusion one way or the other were so nearly balanced that considerable importance had to be given to the peculiar circumstances surrounding that testator or to particular expressions contained in his will that would never perhaps be repeated in another. Whatever may be said as to the value of such cases as precedents, it is clear enough, from an examination of the whole line of authority on the subject, that we still adhere to the distinction between the two classes of legacies; and that where the language of a testator, construed in the light of this well-recognized distinction, fairly exhibits his intention that certain legacies should be classed as specific rather than general or demonstrative, the courts will readily declare and effectuate such intent.

In Walls v. Stewart, 16 Pa. 275, the whole subject was most carefully examined by Mr. Justice Bell in a learned opinion reviewing the older cases, both English and American. The true line of demarcation which segregates specific legacies from all others is there clearly pointed out in the following language: "Indeed, I think an examination of the authorities, English and American, will show that wherever an intent is exhibited to make distribution of the value of lands, either by means of a sale and division of proceeds, or by the charge of a sum in numero, payable by the devisee of the land as a quasi partial purchase of the estate devised, the bequests are always treated as specific, and, consequently, liable to

be adeemed by an alienation of the land in the lifetime of the testator. I may add, this is also true where the only gift of a legacy is found in the direction to pay it out of the land devised: 2 Jarman on Wills, 593, and the cases there cited: or, as it is elsewhere expressed, where a testator charged his real estate with a sum of money, and then bequeaths the sum so charged: Dickin v. Edwards, 4 Hare 273; though it is commonly otherwise where there is a distinct bequest, afterwards generally charged on the lands of the donor." The many later cases referred to in the careful opinion of the learned court below and the able briefs submitted by counsel exhibit no intention on the part of the courts to depart from the line thus indicated.

Turning then to an examination of the will of the testator in the case before us, we discover his primary intent, with relation to the particular legacies in question, in the following language descriptive of what he intended to bequeath and the persons among whom it was to be divided: "I give, devise and bequeath unto my nephew, Jacob Melancthon Stoever, and to his heirs and assigns, my farm, . . . . containing 50 acres more or less at and for the sum of one hundred and seventy-five ($175.00) dollars per acre, which said purchase money I order and direct him to pay to the following named legatees in manner following: Item—I give and bequeath one thousand dollars thereof to my friend Nathaniel Lieb (the present appellant) and to him, his heirs and assigns, absolutely, etc."

Confining our attention for the moment to this significant language, we at once discover that what the testator intended to do was to give to the persons he was about to name the purchase money which was to be paid by the devisee of his real estate. We have here no case in which the testator evinces his intent to give certain sums of money to certain legatees and then merely indicates his will or preference that such legacies should be paid out of a certain portion of his estate; but on the

contrary, before any legatee is mentioned, we have the clearly expressed intent of the testator that what he is about to give away is the purchase money of certain land devised at a valuation; and this money is to be paid or distributed directly by the devisee to the parties named, the present appellant being the first of them. Or, to recur to the language of Mr. Justice BELL already quoted, we have thus far, expressed with all reasonable clearness, the intent of the testator "to make distribution of the value of lands;" or again, we have with like clearness a case "where the only gift of a legacy is found in the direction to pay it out of the land devised." The language used by the testator in the later bequests of other portions of this fund to the other legatees named indicates that he kept clearly in mind this primary intent and that he was dealing with portions of the purchase money for which he had provided in the devise of his real estate quoted. If then that devise had become effective and the devisee named had accepted the land devised at the valuation, it seems to us there can be but little doubt that this appellant would have been compelled to look to the purchase money alone for the amount of his legacy and that the remaining portion of the testator's estate would have been relieved from any liability to pay the same.

Unfortunately it turned out that there existed in the mind of the testator a very erroneous idea as to the true value of the land he had thus devised. His devisee refused to accept the land at the valuation, as he of course had the right to do. The testator had evidently contemplated this possibility because he expressly provided that in such case his executors were to sell the land. But he does not appear to have contemplated, even in that event, that there would likely be any diminution of the fund, a share in which he had previously given to this appellant, because he makes no other provision for the payment to him and the others in his class of any other sum or in any other manner except in the general provision we have first quoted.

When the land was actually sold, it produced a fund not much more than half the purchase price, which the testator undertook to divide among this appellant and others. It is argued that if these legacies must be regarded as specific, the bequest to Stoever Zimmerman, a nephew, whose executors have also appealed, would be inadequate to accomplish his expressed purpose. This may be so, but it does not justify the court in rewriting the will of a testator who undertook to give away a sum of money which he did not in fact possess. What the testator would have provided in his will, had he then realized that his land would produce only the sum for which it was afterwards sold, no human tribunal can determine. To conjecture that the testator, in such event, would have given to this class of legatees just the sums he named, to the exclusion of others mentioned in his will; or that he would have omitted some so that the others could receive the amounts indicated; or that he would have cut down each legacy so as to maintain the same relation to the actual purchase money of the land, it now sustains to the value he had in mind, would be to pass the limit which must always define the action of courts administering established principles of law. But we plant our judgment on a firm foundation when we recognize that the testator has clearly declared, almost in the language of the eminent jurist we have quoted, that the legacies with which we are dealing are specific legacies. That being established there remains no contention as to the manner in which the fund should be distributed.

The learned judge below in a careful opinion has, we think, himself fully vindicated the conclusion he has reached, and it is doubtful whether we have added much of value in support of it.

Decree affirmed and appeal dismissed at the costs of the appellant.