### Durham's Admr, et al. v. Clay.

(Decided February 7, 1911.)

## Appeal from Nicholas Circuit Court.

1. Will—Residuary Clause—General—Particular.—A residuary clause in a will may be either general or particular. It is general when the language used by the testator is broad enough to pass all undisposed of property of whatever kind or nature. It is particular when, from the language used, it is apparent that the testator intended to limit the property covered by it to the residuum of certain specified properties.

2. Same.—A residuary clause giving to A "the money left of the sale of stock," is particular in its nature, and would not cover the proceeds of real estate.

3. Real Estate—Proceeds—Title.—A bequest of the proceeds of certain real estate does not pass the title to the land to the beneficiary, but only entitles him to the proceeds thereof. It is personalty.

4. Real Estate—When Adeemed.—When the proceeds of real estate are bequeathed to designated persons, the bequest is not adeemed by a sale of the land by the testator, so long as the money realized from the sale can be traced out and identified.

5. Same.—Slight changes in personal property during the life of the testator do not operate to adeem the bequest so long as the property remains in kind or specie and can be identified.

6. Same.—The proceeds of land bequeathed, which is afterwards sold by the testator, and invested in mortgage or land notes, is not adeemed so long as the money realized from the sale can be traced and identified. But where such proceeds are invested in other lands, the bequest is adeemed.

STROTHER & WYCOFF, CHAS. D. GRUBBS, ROBERT H. WINN and J. J. OSBORNE for appellants.

HOLMES & ROSS and JOHN P. McCARTNEY for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

John B. Durham, of Nicholas county, Kentucky, was twice married. By his first wife he had three children. By the second wife he had no children. His second wife had some property of her own, and in March, 1904, made a will, in which she disposed of this property. Thereafter her husband died, and by his will gave to her sixty-two acres of land. In January, 1905, after she had acquired this land from her husband's estate, she wrote a codicil to her will, in which she attempted to dispose of this land. Some time following the execution of this codicil, she sold the land, and invested the proceeds, along with other money which she then had in bank, in purchase-money and mortgage notes, and land.

Upon her death her will was duly probated, and this litigation grows out of a dispute arising among the respective claimants to the estate left by her. It is the contention of the grandchildren, they being the only descendants and heirs-at-law of the three children of her husband's first wife, that they take the money which the testatrix realized out of the sale of the land; whereas, the heirs-at-law of testatrix claim that they take the

proceeds of this sale as undevised estate; and the devisee, Sallie Scott Clay, insists that all of this property passes to her under the residuary clause in the original will. The trial judge was of opinion, and so held, that the proceeds of the sale of the land all passed under the residuary clause in the original will to Sallie Scott Clay, and the heirs-at-law of testatrix, as well as those of her husband, named as devisees in the codicil, ask a reversal of the judgment of the lower court, and that such construction be placed upon the will and its codicil as will award them the property in litigation.

The following is the will and codicil:

"First. I give and bequeath to Sallie Harper Scott (called by adoption Sallie Durham), the sum of $500, more or less, now in the Deposit Bank of Carlisle, which is mine by inheritance. Should I invest said $500 in any kind of property, then the property is to be hers at my death.

"I also give and bequeath to said Sallie Harper Scott, my solid gold watch, my sewing machine, my largest zinc trunk with contents, also, as much of my bedding, consisting of beds, bedding, etc., as she may desire, also one pair of gold-rimmed glasses and her selection of dishes outside of those mentioned in this will, also wardrobe.

"Second. I give and bequeath to Bert Durham two shares in the Morefield Deposit Bank, and one pair of gold-rimmed glasses and my large dictionary, also my china press and book case.

"Third. I give to John Bascom Durham, two shares in the Moorefield Deposit Bank, and a zinc trunk, second size which he once asked of me.

"Fourth. I give to Annie Durham my silver tea set and what dishes she and saidSallie Scott may agree upon, there must be no dispute or hard feelings indulged in over my effects.

"Fifth. I give to Allie Graves Grubbs my self-interpreting Bible, should she die without heirs, it is to be given Allie Woodson Armstrong.

"Sixth. I give to Jennie Graves Armstrong my large Japan bowl and large cake bowl and silver ladle.

"Seventh. I give to Susan Gregory a set (one-half dozen) of silver teaspoons with 'Lane' engraved on bowl of each spoon. To Mae Stone one silver souvenir spoon with 'Lane' engraved in bowl.

"Last. There are many other things not specified in the foregoing writing that I wish given as keepsakes to such of my friends as desire them.

"I desire that my stock may be sold and the sum of $25 be given the Christian church at Bethel where my membership now is.

"I also desire a heifer calf, or the money to buy one be given Ellen ————, colored, daughter of Henry (Dora) Owings. To Lucy Owings some of my clothing, etc.

"The money left of the sale of stock and the legacies herein mentioned is to be paid over to Sallie Harper Scott, the girl above mentioned, whom I raised. It is my desire and prayer that each one who is heir by this will may be satisfied. I beseech Bert Durham and John Bascom Durham to see that said Sallie Harper Scott never suffers for the necessities of life while they live.

"Written under my hand this day, March third, nineteen hundred and four.

(Attest) . "ELLEN LANE DURHAM."

"Codicil, March 18, 1905.

"Since making my will in March, 1904, I have fallen heir by the death of my dear husband, John B. Durham, to sixty-two acres of land lying southwest of the home tract on which said John B. Durham resided. The boundary of which is mentioned in the will of said John B. Durham. I do hereby will to Bert Durham during his life, one-half interest in said lands, and to Sallie Scott, the girl we raised, an interest in the other half of said tract as long as she remains single. Should said Sallie Scott marry, Bert Durham is to use her half of the land during his life and to see that said Sallie Scott never suffers for the necessities of life. At the death of Bert Durham the land is to be sold and the money equally divided among John B. Durham, Charles Ditzler Durham, Jennie Armstrong and Allie Grubbs. Should Jennie Armstrong die before Bert Durham, her daughter, Allie Woodson Armstrong, is to be her heir and the money paid to her when she becomes of age."

We will first determine the rights of appellee, Sallie Harper Scott Clay, for, if the judgment as to her is correct, it is unnecessary to enter upon a consideration of the controversy between the Durham and the Lane claimants. The clause of the will, under which appellee claims title is found in the latter part of the original will, and is in this language:

"The money left of the sale of stock and the legacies herein mentioned is to be paid over to Sallie Harper Scott, the girl above mentioned, whom I have raised."

For her it is argued that this residuary clause is general in its nature, or at least general or broad enough to support her claim to the proceeds of the sale of this after-acquired land. Page on Wills, section 565, defines a residuary clause of a will to be:

"That part which makes disposition of the residuum of part or all of testator's property, that is that part thereof not otherwise disposed of by will. A general residuary clause disposes of all of the residum of testator's property; while a particular residuum clause disposes only of the residuum of certain specified property."

Schouler, in the recent edition of his work on Wills and Administration, page 248, section 519, says:

"A residuary bequest of personal property operates upon all the personal estate which the testator may have at his death, and prima facie carries with it not only whatever remains undisposed of by his will, but whatever despite the will fails of disposition in the event from one cause or another. Nevertheless, this presumption is liable in any case to be rebutted; and where the will shows that the testator meant that the residuary gift should take only a limited effect, that meaning must operate."

Section 4839, Kentucky Statutes, provides that:

"A will shall be construed, with reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator unless a contrary intention shall appear by the will."

There being no contrary intention expressed in the will under consideration, and treating it as speaking of a date immediately preceding the death of testatrix, the proceeds of sale of this real estate undoubtedly pass under this residuary clause if it is general in its nature, and the codicil does not stand.

When this will was written testatrix was disposing of many articles of personal property, including some money in bank. The money in bank she had given to Sallie Harper Scott in item one of her will. In the last clause she recites that there are many other things not specified in the foregoing writing — evidently by "things" referring to articles of household furniture and wear—that she wished given as keepsakes to her friends. She then directs that certain stock which she owns be sold, and, of the proceeds realized from this sale, $25 given to the church; and this bequest to the church

is followed by the clause under consideration. It does not say the rest and residue of my estate, or language susceptible of as broad a construction or interpretation as this language would justify. But it is specific in its nature, and directs that the money left of the sale of stock is to be paid over to appellee. The language used, when fairly and reasonably interpreted, would not justify or support the contention that the testatrix intended by it to pass to appellee any property except such as should remain of the sale of the stock after the special bequest to the church had been satisfied. She did not contemplate that any other property would pass to appellee under this clause of her will. That she placed this construction upon the will is evidenced by the further fact that thereafter, when she acquired other property of the value of at least $5,000, she, in a codicil, attempted to dispose of it. If it had been her intention that this after-acquired property should go as a part of her estate to appellee, and that such devise was covered by this residuary clause, then the draft of the codicil was wholly unnecessary. An examination of this codicil shows that the testatrix did not want appellee to have this property. She merely desired her to have the use of a half of it as long as she remained single, and that after she married that she should have a beneficial interest in the net proceeds from the rental of half of the land during the life of Bert Durham. If the residuary clause was general in its nature, it would cover and pass title to all after-acquired property, whether it was real or personal estate, at decedent's death, so that the fact that the land was sold and the proceeds converted into money in no wise enlarges appellee's rights under the will. We are clearly of opinion that by the clause under consideration the testatrix did not intend to give to appellee any property whatever other than such money as should be realized from a sale of her stock, after the special bequest to the church had been satisfied.

This brings us to a consideration of the point in dispute between the Durham and the Lane claimants. Each contend that the property in question did not pass under the residuary clause above referred to, but they differ in their application of the law to the facts presented controlling the disposition of this after-acquired property. Of course, if it had not been sold by the testatrix in her lifetime, it would have, under the will, upon the death of Bert Durham, been sold, and the proceeds divided among the Durham heirs therein designated. But Bert Durham

died before the testatrix, and Sallie Harper Scott, the girl whom testatrix had raised and for whom she was making provision in her will, having married, the period fixed under the codicil for the sale of this after-acquired land and the distribution of the proceeds thereof arrived. In fact, under the terms and provisions of the codicil, each of the events designated in the codicil which postponed its sale having occurred, either prior to the death of testatrix or almost immediately thereafter, if the land had not been sold by testatrix in her lifetime, the Durham heirs, to whom the proceeds were willed, could have demanded a sale of this land at any time in order that the proceeds might be divided among them as directed. The fact that it was sold by testatrix has brought about and produced this controversy.

It is claimed for the Lane heirs that, inasmuch as the land was sold by testatrix in her lifetime and converted into money, and this money used by her in the purchase of notes and other real estate, that this gift or devise was adeemed, and that there being no general residuary clause in the will, it passes to them as undevised estate. For the Durham claimants it is contended that this devise to them was not of real estate, but of personalty; that they had no claim whatever upon the land, but merely an interest in the proceeds arising from a sale thereof whenever such a sale should be made; that, inasmuch as it was a money bequest, and testatrix sold the land herself rather than wait for it to be sold at Bert Durham's death, as provided for in the codicil, they are still entitled to the money received by her for it so long as they can trace and identify it. In other words, they insist that the sale of this land by testatrix, and the conversion of it into money, does not destroy or adeem the legacy, but that they are still entitled to the money if they can trace and identify it. This they have attempted to do, and as to how well they have succeeded in its identification we will consider hereafter.

The authorities agree, that where real estate has been devised to one not an heir, and thereafter sold by the testator, such act operates as an ademption or revocation of such devise. And, indeed, this rule would be universal in its application but for certain statutory enactments which have changed it in so far as heirs are concerned; section 2068, Kentucky Statutes, in this State having to this extent modified the general or common law rule, and similar statutes in other States having accomplished the same result there.

But as to personalty a different rule of construction obtains, and where personal property is bequeathed, although it is slightly changed in form by the testator, so long as it remains in specie or kind the legacy is not adeemed. Many illustrations of changes of this character that may be made are cited in Page on Wills, section 781. From the authorities it may be stated as a general rule that a specific bequest of personal property is not adeemed by a slight change or alteration therein; though, if the change is radical or material, it operates as an ademption.

In the case under consideration the bequest to the Durham children was the proceeds of the sale of certain real estate, that is, a money bequest. Were these bequests adeemed by a sale of this property by the testatrix in her lifetime, and the investment of the proceeds of such sale in other real estate, mortgage notes, etc.? Applying the rule above announced, if this property has been kept in specie and can be traced and identified, then it would seem that the legacy is not adeemed; otherwise it is.

The case of Miller's Extr v. Malone, 109 Ky., 133, 22 Rep., 635, decided by this court in 1900, is in many respects similar to the case under consideration. In that case the testatrix gave a house and lot in Shelbyville to her executor in trust to sell and divide the proceeds of sale among the children of H. C. Malone. The children of H. C. Malone were not heirs of testatrix. They were strangers to her blood. After she had made this will she sold the house and lot, received $200 in cash, and took notes for the balance of the purchase money.

It was contended in that case that the sale of the house and lot by the testatrix worked an ademption of the legacy, but, upon reviewing the case here, this court held that it did not, at least to the extent of the proceeds of the sale which were identified, that is, the purchase money notes which were taken. There was no showing in that case as to what became of the $200 that was paid in cash, and inferentially this court decided that there was an ademption as to this portion of the proceeds of the sale, for the reason that it was not traced out and identified.

The only appreciable difference between that case and the case at bar is that a trustee was directed to sell in that case, whereas the testatrix in the case at bar directed that the sale be made after the expiration of the

life estate of Bert Durham. This is not a substantial difference, because where a will directs land to be sold without making any provision as to who shall sell it, a court of chancery will direct its sale in order to effectuate the will and purpose of the testator, if, in fact, the administrator with the will annexed would not be clothed with such power.

The proof shows that the land in question was sold by the testatrix for $5,000; $2,500 cash and $2,500 on one year's time; that she collected from this sale in all $5,150, which sum she deposited in bank to her credit, where she already had on deposit the money which she bequeathed to Sallie Harper Scott. At the time of her death she had on hand land notes of the value of $4,241.62, and a house and lot for which she had paid $1,400, making a total of $5,641.62. In their answer, the Durham claimants assert that the money realized from the sale of this land and the interest on the $2,500 for one year, together with the money which the testatrix had in bank at that time, is the same money which was used by testatrix in the purchase of the notes and the house referred to; and the proof which they offered in support of this contention establishes the fact.

In the case of Noe v. Vannoy, 6 Jones' Equity (N. C.), 185, which was cited with approval in the case of Miller's Extr v. Malone, the court said:

"As the proceeds of the sale of the property is given, it follows that if such part thereof as is specified, can be traced out and identified, at the time of the death of the testator, the legacy will take effect, and there will be no ademption, or, only a partial one."

In that case the will provided:

"I further give to my children, by a former mariage, the proceeds of the sale of my town property in the town of Wilkesboro. or so much thereof as is herein specified, to-wit, to my son, Joel Alfred, $200, etc."

The testator sold the property mentioned, and it was claimed that the sale was an ademption of the legacy.

The case at bar is not distinguishable from Miller v. Malone, above referred to, and on the authority of that case the legacy to the Durham children was not adeemed by the sale of the property by testatrix, at least so far as the proceeds arising from that sale can be traced out and identified. From the evidence in this case it is apparent that the money realized from the sale of this land was placed in bank along with other money which testa-

trix then had on deposit in said bank, and was invested by her in notes which, at the date of her death, amounted to $4,241.62. The balance thereof, to-wit, $1,400, was invested in a house and lot. Of the money invested in these notes, at least $500, under the first paragraph or clause of the will, under the rule which we have announced, belonged to Sallie Harper Scott Clay. So that there is in fact, of the proceeds of the sale of this land, traced into these notes, the sum of $3,741.62. The balance of the purchase money realized from the sale of this laid was invested in the house and lot, for which testatrix paid $1,-400.

The question here arises, may money specifically bequeathed be invested in real estate by the testator without adeeming the bequest, even though the money is accurately traced into the real estate? As stated, where a legacy of personal property is changed, it does not operate as an ademption so long as it remains in specie, and the change is not radical. But we have been unable to find any case that has extended the rule to the extent of permitting personal property to be converted into real estate without its operating as an ademption.

The Durhams rest their right to recover upon the theory that the bequest to them was not real estate, but the proceeds thereof—money arising from the sale of the land. We hold that they are entitled to have and receive so much of the bequest as remains in specie and has been traced and identified, but no more. If, when testatrix sold the land, she had placed the money in bank to her credit as a time deposit, and received a certificate therefor from the bank, this certificate would certainly represent the proceeds of the sale. And we are unable to draw a distinction between lending the money to a bank on a certificate of deposit and buying land notes with it. A certificate of deposit and the notes alike represent the money; but not so with real estate. The notes, like the certificate, call for so much money, the proceeds of the sale, or part of it. While the deed to the land does not represent money, but evidences title in the holder to the land.

Testatrix had on deposit in the Carlisle Deposit Bank to her credit at the date of her death the sum of $139.28. This sum, under item one, together with $500 which was in bank and used by the testatrix in the purchase of the notes in question, belongs to appellee. The balance of the proceeds of the sale of the land, which has been iden-

tified and traced into the notes held by testatrix at her death, passes, under the codicil, to the Durham claimants. The house and lot in Carlisle, not having been disposed of by testatrix in her will, passes as undevised estate to her heirs-at-law, the Lane claimants. We are of opinion, that inasmuch as $3,741.62 of the proceeds of this sale has been traced directly into these notes that were on hand at the death of testatrix, the legacy to the Durham claimants to this extent was not adeemed; and that they are entitled to have and receive this amount. But as to the money which was invested in real estate there was an ademption. There is no authority in the will given to sell any land other than the sixty-two acres specifically named. If we should hold that the proceeds of this sale, traced into the purchase of this house and lot, passed to the Durham claimants, they would receive it as real estate, and not as personal property.

Judgment reversed and cause remanded, with instructions to enter a judgment in conformity with this opinion.