Nakoneczny Estate.

Argued March 14, 1973. Before Jones, C. J., Eagen, O'Brien, Roberts, Nix and Manderino, JJ.

*Charles D. Coll,* for appellants.

*J. Robert Maxwell* and *Thomas F. Nelson,* with them *Judd N. Poffinberger, Jr., Maxwell & Huss,* and *Kirkpatrick, Lockhart, Johnson & Hutchison,* for appellees.

Opinion by Mr. Justice Nix, May 22, 1974:

Michael Nakoneczny died testate on January 26, 1970, leaving a Will dated November 5, 1956, an insur-

ance agreement executed the same day and two codicils dated May 4, 1966 and March 27, 1967 respectively. The Will and codicils were admitted to probate and an inventory and appraisement were filed showing a gross estate of $545,483.21. This is an appeal from the denial of exceptions filed to the Opinion, Order and Decree of Distribution by appellants, Paul Nakoneczny, son of testator, and his wife, Stella. The exceptions were dismissed and the Decree of the auditing judge was affirmed by the Court en banc on April 25, 1972.

#### Ademption of the Specific Devise of the Premises 3039 Preble Avenue

In paragraph four of his will testator provided: "FOURTH: I give, devise and bequeath that certain parcel of real estate situate at 3039 Preble Avenue, Pittsburgh, Pennsylvania, which is presently operated as a tavern, together with all fixtures forming a part of the said realty and all equipment necessary to the operation of the said tavern, to my son, PAUL NAKONECZNY, if he survives me. It is my desire that my Executor secure, if at all possible, the transfer of the liquor license to my son, PAUL NAKONECZNY, if he is then living."

In November of 1956, testator owned the building situated at 3039 Preble Avenue, Pittsburgh. A portion of these premises was used in the operation of a restaurant and barroom by testator and the remainder served as a dwelling for him and his family. Decedent operated this business until January 1960 when he gave the business, equipment, supplies and liquor license to his son, the appellant, Paul Nakoneczny. In May of 1968, the property was acquired by the Urban Redevelopment Authority and the bulk of the proceeds were used by decedent to purchase certain bonds which he retained and remained in his possession until his death. The

auditing judge found that there had been an ademption and denied appellants' claim to the bonds that had been purchased with the proceeds derived from the sale of the Preble Avenue property. We agree.

It has long since been decided in this jurisdiction that a specific legacy or devise is extinguished if the property is not in existence or does not belong to the testator at the time of his death. *Soles Estate,* 451 Pa. 568, 304 A.2d 97 (1973); *McFerren Estate,* 365 Pa. 490, 76 A.2d 759 (1950); *Horn's Estate,* 317 Pa. 49, 175 A. 414 (1934); *Harshaw v. Harshaw,* 184 Pa. 401, 39 A. 89 (1898); *Hoke v. Herman,* 21 Pa. 301 (1853); *Blackstone v. Blackstone,* 3 Watts 335 (1834). Testator's intent is not relevant where the property devised or bequeathed in his will is not part of his estate at death. Where the legacy has been determined to be specific "[t]he legatee is entitled to the very thing bequeathed if it be possible for the executor to give it to him; but if not, he cannot have money in place of it. This results from an inflexible rule of law applied to the mere fact that the thing bequeathed does not exist, and it is not founded on any presumed intention of the testator." *Horn's Estate, supra* at 53; *Hoke v. Herman, supra* at 305. See also, *Harshaw v. Harshaw, supra; Pruner's Estate,* 222 Pa. 179, 70 A. 1000 (1908). This rule is equally applicable where the specifically devised or bequeathed property is removed from testator during his lifetime by an involuntary act or by operation of law.[1] *Harshaw v. Harshaw, supra; Pleasants'*

---

[1] "It was once thought that ademption was dependent on intention, and 'it was, therefore, held in old days that when a change was effected by public authority, or without the will of the testator, ademption did not follow. But for many years, that has ceased to be law'. . . . What courts look to now is the fact of change. That ascertained, they do not trouble themselves about the reason for the change." *In Re: Brann,* 219 N.Y. 263, 114 N.E. 404, 405 (1916) (CARDOZO, J.).

*Appeal,* 77 Pa. 356 (1875). Thus, where it is established that the bequest or devise was specific and the nonexistence of the item in the testator's estate at the time of death, an ademption results.

The only issue crucial to the resolution of the problems presented is whether the devise of the realty in this case was specific. A specific devise is a gift by will of a specific parcel which is identified and distinguished from all other parcels of land, and which may be satisfied only by delivery of the particular parcel of property. *Soles Estate, supra* at 573; *Snyder's Estate,* 217 Pa. 71, 66 A. 157 (1907). Appellant first argues that this was a demonstrative devise and thus not subject to ademption. He argues that paragraphs seven[2] and eight[3] evidence a clear intention on the part of decedent to assure Paul's right to the proceeds in the event the Preble Avenue property was sold. Although, as has been stated, intention is not relevant on the question of ademption, it is relevant when the issue to be determined is whether the legacy is demonstrative or specific. *Shearer's Estate,* 346 Pa. 97, 29 A.2d 535 (1943); *Walls v. Stewart,* 16 Pa. 275, 281-282 (1851). Further, that intention must be gathered not only from the language used in creating the bequest or devise but from the provisions of the will as a whole, and if there is doubt, courts are inclined to find a demonstrative rather than a specific legacy, devise or bequest.

---

[2] "Paragraph Seventh: Subject to the provisions of Paragraphs Third and Fourth, I authorize my Executor to sell any and all real estate of which I die seised, at public or private sale, for such prices and upon such terms and conditions as it shall deem advisable, and to make, execute and deliver good and sufficient deed or deeds there."

[3] "Paragraph Eighth: Subject to the provisions of Paragraphs Third and Fourth, I authorize my Executor to make distribution of my estate in kind, in cash, or partly in kind and partly in cash, as my Executor shall believe advisable."

*Shearer's Estate, supra* at 101.   See also *Crawford's Estate,* 293 Pa. 570, 574, 143 A. 214 (1928).   Here, however, the language of paragraph four leaves no question of the intent to create a specific devise.   Nor do we find any merit in the suggestion that paragraphs 7 and 8 in anyway alters this conclusion.   Clearly paragraphs 7 and 8 were merely limiting the power of the Executor to prevent the sale of the property that was designated in paragraph 4 as the subject of the specific devise provided that the property was an asset of the estate at the time of death.   In our judgment, these paragraphs strengthen rather than weaken the view that testator intended a specific devise.

Appellant's reliance upon *Shearer's Estate, supra,* is misplaced.   In *Shearer's Estate,* the testator created by will a trust for the benefit of his son, for and during the lifetime of the son.   After describing his farm along with the stock and personal property thereon as the corpus of the trust, testator provided: "[t]he value of the said farm and contents I fix at the sum of Six Thousand Dollars, so that my said son shall receive the use and benefit of said amount out of my estate."   From other provisions in the document it was clear that testator was attempting to equalize the distributions among his children. This Court there properly held: "..., it is quite obvious that the intention of testator was that his son Clayton should, in all events, receive the benefit of an amount of $6,000, his paramount desire being to equalize the shares of his children after taking into consideration the amounts that some of them had received in his lifetime.   As Jacob had already obtained $6,000, and each daughter $2,000, he gave to each daughter $4,000 more and to Clayton the farm and its contents, the value of which he expressly fixed at the sum of $6,000 'so that my said son shall receive the use and benefit of *said amount* out of my estate.' "   346 Pa. at 101.

As evident as testator's "demonstrative" intent was in *Shearer,* the intent of this testator to make a specific devise is equally as apparent. The fourth paragraph fails to express any intention to carry with it the proceeds from a possible sale of the subject real estate.

Appellant's reliance upon *Frost Estate,* 354 Pa. 223, 47 A.2d 219 (1946) is also of no avail. In *Frost Estate, supra,* where testatrix provided a gift to her brother and sisters of the proceeds of her General Motors stock and prior to death sold the stock, however the funds were traceable, we held that the gift was not adeemed. Our decision in *Frost* was a recognition of a distinction between a gift of stock and a gift of its proceeds. Consistent with the decisions in a number of other jurisdictions[4] we held in the latter instance where the money can be traced the gift is not adeemed and the legatee is entitled to the proceeds. Here, however, there was not a gift of the proceeds from the sale of the realty but rather a gift of the realty itself.

Finally, appellant argues that Section 14 of the Wills Act of 1947 is applicable.[5] This section provides: "(17) Ademption. A specific devise or bequest shall not be adeemed when the testator or the testator's estate receives an asset in exchange for the subject of the devise or bequest and the act which otherwise would have caused the ademption occurs while the testator is an adjudged incompetent. In such case the devise or bequest shall be deemed to apply to whatever was received in exchange. Added 1965, Dec. 22, P. L. 1194, §1." Appellant attempted to demonstrate that the decedent became incompetent shortly after the sale of the subject

---

[4] *Seifert v. Kepner,* 227 Md. 517, 177 A.2d 859 (1962); *Gist v. Craig,* 142 S.C. 407, 141 S.E. 26; *Durham's Adm'r v. Clay,* 142 Ky. 96, 134 S.W. 153; *In Re: Barrows' Estate,* 103 Vt. 501, 156 A. 408. See also, 165 A.L.R. 1032.

[5] Act of April 24, 1947, P. L. 89, sec. 14, as amended, 20 P.S. 180.14, par. 17.

real estate and was therefore unable to make a new Will. To the contrary, there was substantial testimony in the record that indicates decedent continued to conduct his personal affairs competently for many months after the June 1968 sale. In any event there was never an adjudication of incompetency and thus this statutory provision is inapplicable. We therefore affirm the Court en banc's ruling that the devise set forth in paragraph four of the will was adeemed.

## The Alleged Contract Between Decedent and Appellant Paul Nakoneczny

In the alternative Paul claims the proceeds from the sale of the Preble Street property under the theory of breach of contract. He contends that the record demonstrated that a contract existed between him and his father, whereby the father had agreed to devise the property to him by will and that the ademption of the property resulted in a breach of said contract. We recently observed in *Vajentic Estate*, 453 Pa. 1, 306 A.2d 300 (1973) : "We note first that, while contracts to make a will in a certain manner, are recognized in Pennsylvania, such contracts are viewed 'with misgivings and suspicion'. Fahringer v. Strine Estate, supra. As we said in Fahringer, at page 52: 'A contract to make a will in a certain manner or to bequeath by will a specific monetary sum is recognized in Pennsylvania as valid, provided the *creation* of such contract and its *terms* are proven with clarity and conviction and valid consideration shown [cites omitted]. However, because resort to such contracts represents an effort to effect a distribution, either in whole or in part, of the estate of a decedent in a manner different than the orderly procedure of a will—the stringent requirements of which have been set forth by the legislature—and because of the opportunity such alleged contracts afford for the presentation of false and fraudulent claims, tradition-

ally the courts have been reluctant to give recognition to such contracts and have viewed claims based on such contracts with misgivings and suspicions.'" 453 at 7, 306 A.2d at 304. To establish the existence of the contract Paul and his wife offered testimony to that effect. In addition, testimony was offered in support of the existence of the contract by Rosemarie Michelson, the mother-in-law of Paul and Rosemary, Paul's daughter. The court below found the testimony of Paul and his wife Stella was barred by the Act of May 23, 1887, P. L. 158, par. 5, 28 P.S. §322. The court also determined that the testimony of Rosemarie and Rosemary standing alone failed to provide the degree of proof necessary to establish the existence of a contract. A review of the record satisfies us that the testimony of the daughter and the mother-in-law was indeed inadequate. The crucial issue, therefore, is whether the court was correct in determining that the testimony of Paul and his wife was excluded by the Dead Man's Act. That statute provides in pertinent part: "Nor, where any party to a thing or contract in action is dead . . . and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased . . . party, be a competent witness to any matter occurring before the death of said party. . . ." Proceeding under the theory of breach of contract Paul stands in the position of any other creditor attempting to proceed against the assets of the estate and, therefore, the statute is clearly applicable and bars his testimony. Consequently, Stella, the wife of Paul is also barred. See, *Clay Estate,* 438 Pa. 183 (1970); *Roak's Estate,* 22 Dist. 540 (1913); *Moore Estate,* 439 Pa. 578, 582 n**, 266 A.2d 641 (1970).

## The Claim of Stella Nakoneczny

Appellant, Stella Nakoneczny submitted a claim for housekeeping services, bookkeeping and clerical work. Mrs. Michelson, Ann Ladiska, Rosemary Nakoneczny and Mrs. Mary Kennedy testified in support thereof. These witnesses offered evidence to establish, beginning in 1948 and apparently continuing until the Spring of 1968 when decedent moved into his own apartment, Stella Nakoneczny washed, ironed, cleaned and cooked for the decedent along with herself and her husband who were all residing at the same premises. It was also testified that she kept the books and performed other clerical services for the decedent. The auditing judge found:

"We find that Stella's claim is not supported by the record. She and her husband lived with the husband's father in his household. Any claim for household chores would be offset by the lodging the decedent afforded to her.

"The claim for bookkeeping and clerical services was not proved by evidence of the character required to support a claim against a decedent's estate. There is no evidence as to the period of time covered by the alleged services other than that they commenced in 1948, and presumably ended when decedent moved into his own apartment on Superior Avenue. There is no evidence whatsoever as to how much time per day or per week Stella devoted to the task, nor is there clear evidence as to the nature of the work. There are only 'loose declarations' to the effect that Stella 'kept decedent's books' and 'wrote his checks'. The declarations of decedent to the effect that Stella's money was 'working for her' are totally inadequate to support a finding that decedent had made an agreement with Stella to compensate her for her work. For the foregoing reasons, the claim is disallowed."

After careful review of the record we agree that appellant, Stella Nakoneczny, failed to establish her claim for services against the estate.

Decree affirmed. Costs to be borne by the appellants.

Mr. Justice POMEROY took no part in the consideration or decision of this case.