188

## Schofield Estate

 Before Zavarella, A.J., Watson,
Ross, Schwartz and Rahauser, JJ.

*Jerry B. Landis,* for executor.

*Peter M. Suwak,* for objectant.

OPINION BY SCHWARTZ, J., DEC. 3, 1980 :

This is a case of first impression applying 1976, July 9, P. L. 551, No. 135, Section 13, 20 Pa C.S. §2514(16.1) as amended.

Carolyn Schofield died January 2, 1979, leaving a last will and testament dated March 22, 1969. Paragraph Third of the decedent's will made a specific devise to her nephew, Lawrence F. Hitchon, of her one-half interest in a certain parcel of real estate.

By deed dated July 28, 1976, acknowledged August 5, 1976 and recorded August 13, 1976 in the Recorder's Office of Westmoreland County, Pennsylvania in Deed Book Volume 2222, page 1088, the decedent conveyed her one-half interest along with the other owners of record to Antonio Pagano and Rose Josephine Pagano, his wife, for $225,000.

Following the death of the decedent, her executor, Eutimio R. Vitillo, filed an action in equity alleging that Harry L. Schofield, her husband, misappropriated funds of the decedent, including the proceeds of the sale of the property in question. The matter was settled when the executor received $126,948.84. After allowing for reasonable attorney's fees for the creation of the fund, Mr. Hitchon claims that $99,500 is

identifiable proceeds from the sale of the property for which he is the specific devisee and is entitled thereto.

The executor argues that the subject of specific devise having been sold, the gift to Mr. Hitchon has adeemed. Therefore, the executor's petition for distribution presented at the audit of the estate set forth the scheme whereby the residuary legatees share the aforesaid sum.

Mr. Hitchon argues that the gift has not adeemed because the decedent was allegedly incompetent[1] at the time of the transfer of the property and in support of his allegation cites 20 Pa C.S. §2514 (16.1) Non-Ademption; Incompetency. —

> "If property of an incompetent specifically devised or bequeathed is sold or exchanged or if a condemnation award or insurance proceeds are paid to the Estate of an incompetent as a result of condemnation, fire or casualty, the specific legatee or devisee has the right to the net sale price, the property received in exchange, the condemnation award or the insurance proceeds. This paragraph does not apply if subsequent to the sale, exchange, condemnation or casualty, the Testator has been adjudicated competent and survives the adjudication by one year."

The sole issue in interpreting the foregoing provision is whether or not there may be a post-mortem determination of incompetence.

It is horn-book law that:

> "It has long since been decided in this jurisdiction that a specific legacy or devise is extinguished if the property is not in existence or does not belong to the testator at the time of his death. *Soles Estate*, 451 Pa. 568, 304 A 2d 97 (1973); *McFerren Estate*, 365 Pa. 490, 76 A 2d 759 (1950); *Horn's Estate*, 317 Pa. 49, 175 A 414 (1934); *Harshaw v. Harshaw*, 184 Pa. 401, 39 A 89 (1898); *Hoke v. Herman*, 21 Pa. 301 (1853); *Blackstone v. Blackstone*, 3 Watts 335 (1834). Testator's intent is not relevant where the property devised or bequeathed in his will is not part of his estate at death. Where the legacy has been determined to be specific '[t]he legatee is entitled to the very thing bequeathed if it be possible for the executor to give it to him; but if not, he cannot have money in place of it.' " *Nakoneczny Est.*, 456 Pa. 320.

Prior to July 9, 1976, an exception existed in the Commonwealth of Pennsylvania contained at 20 Pa C.S. §2514 (16):

> "Ademption. A specific devise or bequest shall not be adeemed

---

1. There was no pre-death adjudication of incompetency.

> where the testator or the testator's estate receives an asset in exchange for the subject of the devise or bequest and the act which otherwise would have caused the ademption occurs while the testator is an adjudged incompetent. In such case the devise or bequest shall be deemed to apply to whatever was received in exchange."

Counsel for Mr. Hitchon argues that under the new Section (16.1) (supra p. 2), the legislature has eliminated, "adjudged incompetent", and substituted, "incompetent" and suggests that the legislature in deleting a single key word is particularly significant. (page 4, objectant's brief.) The objectant further points out that 20 Pa. C.S. §5501 in defining incompetent, incorporates no requirement that there be an adjudication.

The official advisory committee comment with respect to §2514(16.1) states:

> "Paragraph (16.1) is derived from Section 2-608(a)[2] of the Uniform Probate Code."

That section provides as follows:

> "If specifically devised property is sold by a conservator or if a condemnation award or insurance proceeds are paid to a conservator as a result of condemnation, fire or casualty, the specific devisee has the right to a general pecuniary devise equal to the net sale price, the condemnation award, or the insurance proceeds. This subsection does not apply if after the sale, condemnation or casualty, it is adjudged that the disability of the testator has ceased and the testator survives the adjudication by one year . . ."

It is immediately clear that the Pennsylvania statute is substantially a verbatim reproduction of the corresponding Uniform Probate Code section. In fact, paragraph a of 2-608[3] is basically reproduced in 20 Pa C.S. §2514(18). The primary difference in 2-608(b) and 2514(16.1) is that the Uniform Probate Code utilizes the term conservator while the Pennsylvania Act utilizes the term incompetent. The Uniform Probate Code, by using the term conservator, eliminates any ambiguity such as that before the court. A conservator can only be appointed following an adjudication of incompetence.

It is significant, however, that the Pennsylvania statute refers to condemnation award and insurance proceeds "paid to the estate of an incompetent". Clearly there can be no estate

---

2. Subsequent to July 9, 1976, Section 2-608 of the Uniform Probate Code was reordered and the relevant section is now 2-608(b) instead of 2-608(a).

3. The former 2-608(b) is now 2-608(a).

of an incompetent without a prior adjudication of incompetency.

It is also significant, as is pointed out by the executor, that the second sentence of §2514(16.1) provides that the non-ademption paragraph does not apply if the testator is subsequently adjudicated competent and survives for a year. 20 Pa C.S. §5517 provides for an adjudication of competency only if a person has previously been adjudged incompetent. This sentence is also contained in the Uniform Probate Code which requires the appointment of a conservator as a precondition to the non-ademption provision. It appears, therefore, that the Pennsylvania legislature intended to adopt in total the construction as framed by the drafters of the Uniform Probate Code.

Accordingly, the argument that the legislature intended significant change by eliminating "adjudged" must fail because, in fact, the legislature made wholesale modifications to this section. (See pages 2 and 3 of this opinion.)

The result suggested by the objectant would create new law in Pennsylvania by providing for a post-mortem adjudication of incompetency. Significantly, the comments as set forth previously to 2514(16.1) make no mention of sweeping changes, thereby casting doubt upon the theory that the legislature intended to create this new legal avenue. It is further noteworthy that the procedures in adjudicating one to be an incompetent have no meaning when applied to a decedent. For example, 20 Pa C.S. §5511(a) provides that:

"Notice of the petition and hearing shall be given in such manner as the court shall direct to the alleged incompetent . . ."

§5511(a) further provides that the alleged incompetent shall be present at the hearing

"unless (i) the court is satisfied upon the presentation of positive testimony, that because of his physical or mental condition, his welfare would not be promoted by his presence or (ii) it is impossible for him to be present because of his absence from the Commonwealth . . ."

§5511(c) provides that

"upon the filing of the petition, the alleged incompetent may be examined by a physician appointed by the court who shall submit his report in writing to the court and to the parties before the hearing."

As pointed out previously, §5517 provides for the adjudication

of competency only once a person has previously been adjudged incompetent. In summary, we do not believe the legislature intended to expand the field of incompetence to a post-mortem determination by merely amending the ademption provisions of the Probate, Estates and Fiduciaries Code.

It is further significant that in other sections of the Probate, Estates and Fiduciaries Code, the legislature does not distinguish between "incompetent" and "adjudicated. incompetent".

For example, Section 5505 utilizes the following phrase:

"The provisions concerning small estates of *incompetents* . . ."

Section 5512 utilizes the identical phrase. Section 5515 states:

"The provisions relating to the guardian of an *incompetent* . . ."

Section 5522 provides:

"A guardian may lease any real personal property of the *incompetent* for a term not exceeding five years after its execution."

Section 5525 states:

"When the Commonwealth or a political subdivision thereof has a claim for maintaining an *incompetent* in an institution . . ."

Thus the legislature has not been fastidious in using the term adjudged before incompetent when it clearly has intended to do so.

Finally, 20 Pa C.S. Section 5524 deals most directly with the issue.

"An incompetent shall be incapable of making any contract or gift or any instrument in *writing after he is adjudged incompetent* and before he is adjudged to have regained his competency." (Emphasis added.)

The objectant's claim that the decedent was incompetent at the time would have no relevance to her transfer of the deed unless she was adjudged incompetent prior thereto. Therefore, in order to read Sections 5524 and 2514(16.1) together and accord both their full meaning, the word incompetent must be read to mean an adjudged incompetent.

Accordingly, there can be no post-mortem determination of incompetency and the gift to Mr. Hitchon adeems.

Objectant also alleges that the sale of the real estate was procured as the result of fraud and undue influence. There is no claim that the sale price was inadequate nor is there an allegation that the executor or any representative of the estate has committed a fraud. As a result, this issue is not properly

before the court. 20 Pa C.S. 711.

PER CURIAM ORDER RE EXCEPTIONS:

And Now, April 15th, 1981, after argument on the exceptions of Lawrence E. Hitchon to the opinion and order of court dated December 3, 1980,

It is Ordered, Adjudged and Decreed that the exceptions are dismissed.

CONCURRING AND DISSENTING OPINION BY EUNICE ROSS, J.:

Before the court are exceptions of specific devisee, Lawrence F. Hitchon, to the opinion and order of court (the Honorable Nathan Schwartz) dated December 3, 1980, alleging the court erred in finding an ademption of a specific devise, in not allowing a "post-mortem adjudication of incompetency" and in finding fraud or undue influence not an issue because of adequacy of sale price and the lack of fraud by estate representatives.

A. Carolyn Schofield died testate January 2, 1979, a resident of Allegheny County, Pennsylvania. Her will dated March 22, 1969, specifically devised "my one-half (½) interest in the real estate held by me as tenant in common with Carmen T. Bauman [decedent's brother] in New Stanton, Hempfield Township, Westmoreland County, Pennsylvania, . . . to Lawrence F. Hitchon". Her residuary estate after other pre-residuary gifts passed in equal shares to Lawrence F. Hitchon and ten other beneficiaries. A codicil dated October, 1970, reaffirmed these gifts.

At the time of decedent's death she did not own the one-half interest in the New Stanton real estate. There had been an antenuptial agreement barring any interest by the husband in the estate.

The executor of the will earlier began a peripheral proceeding against Harry L. Schofield, decedent's surviving spouse, to recover savings and checking accounts of decedent allegedly misappropriated by the husband under powers of attorney and traceable to joint accounts with the husband's daughter by another marriage in Mellon Bank, N.A., and Standard Savings & Loan of Wilkinsburg. The executor also asked the court to set aside for fraud a conveyance by decedent of 180 shares of Bauman Chevrolet, Inc., to the husband.

It is not clear why the action was filed in the civil division in equity rather than in this division but at any event $97,355.25 was recovered for the estate by agreement of the parties and carried in the inventory filed February 12, 1980, and the first and final account filed March 31, 1980.

The specific devisee filed objections to the first and final account alleging that the conveyance of the New Stanton property August 5, 1976, for $225,000 was made by decedent when aged 80 and suffering from physical infirmities and psychosis, that she was unable to make business decisions, was sedated, was subjected to designing influences and fraud by persons close to her, namely her husband. It is further alleged $99,500 of the proceeds was misappropriated by decedent's husband for his and his relatives' benefit. These proceeds, allegedly the same moneys that were in issue in the equity suit, formed part of the settlement approved by the court when the equity suit was settled by the return of the money to the estate.

The other residuary legatees at the audit requested that the cash in the estate representing the New Stanton realty proceeds pass to the residuary beneficiaries by reason of the doctrine of ademption.

The objector at the audit asserted that no ademption was worked and that the specific devisee (and not the residuary legatees) was entitled to the proceeds because of the fraud practiced by decedent's husband before the sale in procuring it and after the sale with respect to the proceeds.

The main issue addressed by the auditing judge was whether section 2514(16.1) of the Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508, 20 Pa. C.S.A. 2514(16.1), prevented an ademption in the case at hand. That section provides:

> "If property of an incompetent specifically devised . . . is sold . . . or if a condemnation award or insurance proceeds are paid to the *estate* of an incompetent . . ., the specific . . . devisee has the right to the net sale price . . ., the condemnation award or the insurance proceeds. This paragraph does not apply if subsequent to the sale . . . the testator has been *adjudicated* competent and survives the *adjudication* by one year" (emphasis supplied).

The auditing judge was correct under the current case

law in dismissing the first objection because this section of the code prevents an ademption only in the case of the sale of property from the estate of an *adjudicated* incompetent who does not survive a competency adjudication by a year. Mrs. Schofield was never adjudicated an incompetent.

It is less clear that the auditing judge should have found that the sale worked an ademption because the issue of the alleged fraud and undue influence of the husband was "not properly before the court", because the sale price was adequate and because no representative of the estate committed a fraud. On these bases the auditing judge on December 3, 1980 found that the real estate devise was adeemed. No decree of distribution was entered on December 10, 1980, the specific devisee filed the current exceptions.

The Probate, Estates and Fiduciaries Code of June 30, 1972, *supra*, 20 Pa. C.S.A., makes no exception to the ademption rule in cases of fraud. The issue then is whether the doctrine of ademption must be applied to a case of alleged fraud without any hearing on the question whether the sale of decedent's interest in the New Stanton property specifically devised was procured by misrepresentation or undue influence of decedent's husband who held a power of attorney over personalty under which he took possession of the alleged proceeds of the sale for the benefit of himself and his family. The alleged fraud and undue influence as to the proceeds have been vitiated in part by the return of the proceeds to the estate. The husband has been denied the benefit of his alleged wrong-doing but the specific devisee now loses his devise to the residuary legatees unless the court may look at the sale itself to see if it was procured by the husband's fraud and undue influence. Would it be proper to say that in ademption cases fraud is *sui generis* and the court without a legislative exception may find that it was tainted, and, although the purchasers were *bona fide* for good value, impress the identifiable proceeds with a constructive trust to stand in the place of the real estate passing to the specific devisee? Or should the court say that even a sale by fraud or undue influence to a good faith purchaser for value is only a species of involuntary conveyance to which we must apply the ancient and rigid judge-made rule

that ademption is not founded on the presumed intention of the testator at the time of sale or involuntary conversion but results from the fact that the subject of the gift is not in decedent's estate at death: *Nakoneczny Est.*, 456 Pa. 320, 323; *Hoke v. Herman*, 21 Pa. 301, 304. Intention, it is said, comes into play only if the testator gave the specific object "subject to agreement of sale" or its "proceeds" or its "equivalent": *Estate of Taylor*, 480 Pa. 488, 497. Such is not the case here.

The problem with involuntary conversion working an ademption, especially in the situation where fraud is alleged, is that such not only may run contrary to what the testator probably intended at the time of conversion but the rule is inflexibly harsh. As a result of cases applying the rigid rule to instances of changes of security forms, unexecuted sales of realty, fires, casualty, condemnation, a patchwork of amendments to the Probate, Estates and Fiduciaries Code of June 30, 1972, *supra.* §§2514(16.1), 2514(17) and 2514(18), 20 Pa. C.S.A. 2514(16.1), 2514(17) and 2514(18), has been added to overcome the case law and to cover sales during adjudicated incompetency, changes in security forms and situations involving cash proceeds of sales, insurance or condemnation where such proceeds are identifiable and unpaid to decedent during life (or within a year of adjudicated competency).

See the recent case of *Forbes Est.*, 15 D. & C. 3d 692, where the court stated on pages 694-696:

. "The law of ademption has been characterized as inflexible and harsh . . . see Fiduciary Review, September, 1964, at 1, and Ademption in Pennsylvania, 69 Dick. L. Rev. 95(1964) . . . Fiduciary Review, September, 1972, at 1, and Sum. Pa. Jur., Intestacy and Wills §§391-403.

"In 1965 the Pennsylvania General Assembly added section 14(17) to the 1947 Wills Act, . . . 20 P.S. §180.14(17), to provide relief from ademption in certain situations involving the estate of an adjudged incompetent . . . incorporated in the 1972 Probate, Estates and Fiduciaries Code as section 2514(16) . . . [S]ee Fiduciary Review, August, 1972, at 1.

"In 1976 the legislature . . . passed numerous omnibus amendments to the P.E.F. Code . . . Among the changes were significant amendments relating to the matter of ademption . . . sections 2514(16.1), 2514(17), and 2514(18). These amendments expand the number of situations in which specific gifts . . . are saved from ademption. Subparagraph (16.1) deals with . . . incompetency and

increases the circumstances under which ademption is determined not to occur . . . [S]ubparagraph (17), . . . [deals] with changes in securities and details those circumstances under which ademption does not occur . . . [S]ubparagraph (18) . . . deals with the balance due to a testator from a change in the property devised . . . An illuminating discussion . . . is . . . found in Fiduciary Review, December, 1976, at 1 . . . [where] the author states:

> " 'Act 135 incorporate provisions of the Uniform Probate Code in PEF 2514 . . . which should make it easier in some instances for our courts to avoid much of the harshness of an inflexible application of ademption rules and to more nearly carry out the probable wishes of testators who have not expressed a "contrary intent" in their wills . . .

> " 'Existing case law will remain significant in the determination of whether a legacy is general, specific or demonstrative . . ., but the distinction will not be encumbered with as many dire consequences inconsistent with the probable intent of the testator . . .

> " 'PEF 2514(18) will change the results in limited instances where the change in form of the asset may or may not have been occasioned by act of the testator, and that which has been received in exchange is identifiable . . .' "

In the instant case it is alleged the sale was involuntary. It is also alleged the proceeds of the sale are identifiable so that there is no problem of tracing them.

In *Fiduciary Review*, December, 1967, p. 4, it was stated as to the changes to the code preventing ademption in specific cases where traceability exists and/or where decedent did not save possession of the cash proceeds:

> " 'Presumably' [the code amendments] also may be of some aid in interpreting the wills of persons dying thereafter especially if the act which would otherwise cause the ademption happens after July 9, 1976. Presumably, they also may be of some aid in interpreting the wills of persons who died prior to July 9, 1976, as evidence of the legislative intent to abandon the inflexible rule of ademption in favor of an attempt to find the probable intention of a testator in circumstances unanticipated by him when the will was written and not reconsidered by him after the occurrence of the unanticipated event. The situation is somewhat akin to the statutory attempt to provide more workable rules of apportionment as to which Mr. Chief Justice Jones in Catherwood Trust, 405 Pa. 61, said at p. 7, 'The legislative enactment did not modify or extinguish any vested property rights. There are no vested property rights in a court-made rule of apportionment.' "

In the instant case there are two kinds of donees asserting

a right to the proceeds of a testamentary gift. The specific devisee contends but for the fraud or undue influence of decedent's husband no sale of the property would have occurred, the proceeds are traceable and he should be allowed to prove the wrongdoing and reach the proceeds never received by decedent save by deposit into an identifiable account converted by the alleged wrongdoer under a power of attorney. The residuary legatees contend the court cannot inquire if the sale was procured by the fraud of decedent's husband even though the proceeds thereof are intact.

Ademption is a court-made rule, not a legislative rule. The judge-made law of ademption has continued to evoke contrary legislation dealing with harsh situations. Court-made law may on occasion be overturned by the courts, particularly in light of the persistent legislative overriding. In the situation of alleged fraud, there is no reason for the courts to condone wrongdoing on the ground that there is no exception as to fraud in the Probate Code. The legislature has not created the rule of ademption. Judges have. The courts ought to recognize that fraud is *sui generis*, is not to be allowed if proved and should be grounds for a judicial finding of an exception to ademption in a situation such as the present where the proceeds are identifiable and were never reduced to possession by the testatrix for commingling with her general estate.

A hearing should be allowed on the non-applicability of ademption by reason of fraud and undue influence.

The objection on this ground should be sustained but the objection raising the question of non-adjudicated incompetency should be dismissed.